UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YOSHA ELLIS,

    Plaintiff,

    v.

STARBUCKS CORPORATION,

    Defendant.

Case No. 15-cv-3451-PJH

**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE**

Before the court is the motion of defendant Starbucks Corporation ("Starbucks") for an order dismissing the complaint in the above-entitled action for failure to state a claim, and an order striking plaintiff's claim for punitive damages. Plaintiff, who is proceeding in propria persona, did not file an opposition to the motion. Having read Starbucks' papers and carefully considered its arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss and DENIES the motion to strike.

**BACKGROUND**

Plaintiff Yosha Ellis resides in Petaluma, California, where he has worked for a local theater company since March 2012. Complaint ("Cplt.") ¶ 3. He alleges that on June 29, 2013, at approximately 9:00 a.m., he was seated with a friend inside a Starbucks located at 125 Petaluma Blvd., but then stepped outside to smoke a cigarette. Cplt. ¶ 9. While he was outside, he was approached by a man and a woman. Id.

The woman allegedly told plaintiff that her daughter was 17 years of age and

plaintiff should "leave her alone," and plaintiff allegedly responded that it was "inappropriate for her to speak to him that way," because he had done nothing illegal, and "if she spoke to him that way in public again, embarrassing him, . . . he would have to call the [p]olice." Id. The man accompanying her then allegedly "became enraged and began screaming and cussing" at plaintiff. Id. Plaintiff ran to the Petaluma Market to use the phone to call the police. Id. He claims that the police advised him he was banned from Starbucks. Id. He then went to the Petaluma Police Department to file a complaint against the officers who had responded to his call. Cplt. ¶ 10.

Later, apparently that same day, plaintiff went to a different Starbucks, located at 205 North McDowell, and asked to use the phone to call Starbucks District Manager Jennifer Kruger. Cplt ¶ 11. He relayed to Ms. Kruger what had occurred at the Petaluma Blvd. Starbucks, and told her he had filed a complaint against the police. Id. Plaintiff alleges that Ms. Kruger told him that it had been her decision to ban him from the 125 Petaluma Blvd. location, because there had been "too many problems." Cplt. ¶ 12. However, she did not explain what the "problems" were. Id.

Plaintiff speculates that Ms. Kruger might have been referring to one of three incidents – an incident in which a Shift Supervisor accused plaintiff of "solicitation" after he had had "a conversation with a young lady about the theater;" an incident in which plaintiff "confronted some baristas at 125 Petaluma Blvd. about what might have been some gossiping about him that made him feel disturbed," specifically, that "there might have been some innuendos in comments made by baristas at this location suggesting that he may 'sleep around a lot;'" and an incident in which the Store Manager "confronted" him, saying that "he was saying things that were making people uncomfortable, although she did not specify what." Cplt ¶¶ 12-13. Plaintiff claims that Ms. Krueger was "uninformed" about these matters, but that from that time he was not able to enter the Starbucks at 125 Petaluma Blvd. Cplt ¶ 14.

Plaintiff asserts further that Ms. Kruger contacted him by telephone on June 3, 2014 (approximately 11 months after the original incident). Cplt. ¶ 15. He claims this

was in response to a request by a Customer Service Manager in New Mexico that Ms. Kruger contact him to discuss the June 29, 2013 incident.  Id.  Plaintiff alleges that he asked Ms. Kruger what she was telling Starbucks employees about why he had been banned from the 125 Petaluma Blvd. location, and that she responded, "Didn't you make sexual advances on a seventeen year old and the Father had to call the police?"  Id.  Plaintiff claims he subsequently contacted the Petaluma Police Department to ask whether there was any report of a father having called the police to report that plaintiff had made sexual advances to his seventeen-year-old daughter, and the Police Department informed him they had no such record.  Cplt ¶ 17.

However, plaintiff also attached to the complaint a copy of a "Petaluma Police Call Report" dated June 29, 2013, which states that plaintiff had advised the reporting officer that "he has asked over 60 girls for their phone numbers because he was looking for a [girlfriend and] he accidentally asked a 17 [year old] for her phone number not knowing she was that young . . . in Starbucks today."

Plaintiff alleges that on December 4, 2014 (almost 18 months after the June 2013 incident), he and Ms. Kruger met "in regards to the matter of his having been slandered by Ms. Kruger," and that he asked Ms. Kruger, "What is Starbucks doing in order to do the right thing now?"  Cplt ¶ 18.  Ms. Kruger allegedly responded that she had called around to various Starbucks locations, and said that it was okay for plaintiff to be a customer.  Cplt ¶ 19.  Plaintiff claims that when he asked Ms. Kruger why she had stated that plaintiff had made sexual advances on a seventeen-year-old, Ms. Kruger asked, "Wasn't there another incident up in Fort Bragg?"  Id.  Plaintiff told her she must be referring to an allegation of a "stalking" of a female barrista, which he claimed had been a false accusation (although he conceded it resulted in his being escorted from the Fort Bragg Starbucks by the police).  Cplt ¶ 20.

During this conversation, plaintiff requested that he be "readmitted" to the 125 Petaluma Blvd. Starbucks, so that he might "restore and repair his reputation in the City of Petaluma."  Cplt ¶ 21.  Ms. Kruger allegedly promised to confer with the store manager

and see what she could do.  Cplt ¶ 22.  After not hearing anything about the matter for two weeks, plaintiff contacted a Regional Supervisor to complain that Ms. Kruger had not responded in a timely fashion.  Cplt ¶ 23.  He claims that the Regional Supervisor did not express any interest in interceding on plaintiff's behalf.  Id.

Plaintiff alleges that on December 22, 2014, at 7:27 a.m., he contacted Starbucks Customer Service with regard to the fact that Ms. Kruger had not responded to his request for readmission, and that at 9:57 a.m., Ms. Kruger contacted him to say that he would not be readmitted to the 125 Petaluma Blvd. Starbucks.  Cplt ¶¶ 24-25.

Plaintiff filed the present action in the Superior Court of California, County of Sonoma, on May 29, 2015, alleging a single cause of action of defamation per se, and seeking injunctive relief and damages, including punitive damages.  Starbucks removed the case to this court on August 3, 2015, alleging diversity jurisdiction.

**DISCUSSION**

A.   Legal Standards

   1.   Motions to dismiss for failure to state a claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable

4

legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level[,]" and a motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

2. Motions to strike

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). The court "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec

5

Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000).

B.      Defendant's Motion

Starbucks argues that the complaint fails to state a claim, and seeks an order striking the prayer for punitive damages.

"Defamation is an invasion of the interest in reputation." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999).  A defamatory statement may be either written (libel) or oral (slander).  Cal. Civ. Code §§ 44, 45, 46.  Here, plaintiff alleges only the oral statement by Ms. Krueger, which was in the form of a question to him – "Well, didn't you make sexual advances on a seventeen year old and the Father had to call the police?"

Slander is "a false and unprivileged publication, orally uttered," which either charges a person with crime or with having been indicted, convicted, or punished for crime; or imputes in him the presence of an infectious, contagious, or loathsome disease; or tends directly to injure him with respect to his profession, trade, or business; or imputes to him impotence or want of chastity; or "by natural consequence, causes actual damage." Cal. Civ. Code § 46.  "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." Smith, 72 Cal. App. 4th at 645.  "Publication need not be to the 'public' at large; communication to a single individual is sufficient." Id.

A statement that is "defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact," is said to be defamatory on its face. See Cal. Civ. Code § 45a.[1]  To prevail in a claim for defamation per se, the

---

[1] "Where the words or other matters which are the subject of a defamation action are of ambiguous meaning, or innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning, or 'innuendo,' which makes them defamatory." Smith, 72 Cal. App. 4th at 645-46. "Where the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense (the inducement)." Id. at 646. "The question whether a statement is reasonably susceptible to a defamatory interpretation is a question of law for the trial court. Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood." Id. at 647.

6

1    plaintiff must plead and prove that a defendant published a false statement to another
2    person or persons, that those persons reasonably understood the statements to be about
3    the plaintiff, that the statements were defamatory on their face (without the necessity of
4    explanatory matter), and that the defendant failed to use reasonable care to determine
5    the truth or falsity of the statement.  See Cal. Civ. Code, §§ 45, 45a; CACI No. 1704; see
6    also Hecimovich v. Encinal Sch. Parent Teacher Org., 203 Cal. App. 4th 450, 471 (2012).

7         Starbucks argues that plaintiff fails to state a claim for defamation per se because
8    he has not alleged that Ms. Kruger failed to use reasonable care to determine the truth or
9    falsity of the allegedly defamatory statements, and instead has alleged only that Ms.
10   Kruger made a false statement which she broadcast "to a third party. . . and possibly the
11   [p]olice," which made plaintiff "appear contemptible and criminal to a reasonable person,"
12   and which caused plaintiff to suffer a "loss of reputation."

13        The court finds that the motion must be GRANTED.  Plaintiff has failed to allege
14   any facts showing that Ms. Kruger did not use reasonable care in determining the truth or
15   falsity of her alleged statement.  In addition, plaintiff has failed to allege facts showing
16   that the alleged defamatory statement was published in a manner sufficient to constitute
17   defamation.  Plaintiff asserts that he asked Ms. Kruger on the phone "what it was that she
18   was telling everyone," and her response was, "Well, didn't you make sexual advances on
19   a seventeen year old and the Father had to call the Police?"  Cplt ¶ 15.  He does not
20   allege any facts showing that she made a particular statement to any third person.
21   Finally, while he refers to a claim that he made "sexual advances on a seventeen year
22   old," he does not allege facts sufficient to show that Ms. Kruger accused him of engaging
23   in criminal behavior.  The dismissal is with leave to amend to plead facts supporting the
24   elements of the claim.

25        The motion to strike is DENIED.  Rule 12(f) motions are directed at pleadings, not
26   prayers for relief.  A prayer for punitive damages does not constitute an insufficient
27   defense, and is not redundant, immaterial, impertinent, or scandalous.  See Whittlestone,
28   618 F.3d at 974-75.  Moreover, entitlement to punitive damages can be determined only

1 after a plaintiff has prevailed in a tort claim that permits him to seek punitive damages.

## CONCLUSION

In accordance with the foregoing, the motion to dismiss is GRANTED and the motion to strike is DENIED.  The dismissal is with leave to amend as indicated.  Any amended complaint shall be filed no later than October 16, 2015.  No additional claims or parties may be added unless plaintiff obtains agreement of defendant or leave of court.  If plaintiff fails to file an amended complaint by the October 16, 2015 deadline, the court will dismiss the case for failure to prosecute.

The hearing on the motion, previously set for September 16, 2015, is VACATED.

**IT IS SO ORDERED.**

Dated:  September 8, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge